UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA CASS,

Plaintiff,

v.

IMPACT ENVIRONMENTAL GROUP, INC.,

Defendant.

CASE NO. C26-1783JLR

ORDER

## I. INTRODUCTION

Before the court is Defendant Impact Environmental Group, Inc.'s ("IEG") motion for partial dismissal. (MTD (Dkt. # 7); Reply (Dkt. # 18).) Plaintiff Joshua Cass opposes the motion. (Resp. (Dkt. # 15).) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised, the court GRANTS IEG's motion for partial dismissal.

## II. BACKGROUND[1]

IEG is an environmental services company specializing in trash compactor repair and maintenance that provides services to clients throughout the western United States. (Compl. (Dkt. # 1-1) ¶ 4.1.) Mr. Cass, who resides in Las Vegas, Nevada, is a skilled technician and manager who began working for IEG's predecessor company in 2022. (*Id.* ¶¶ 2.1, 4.2.) Mr. Cass consistently earned recognition from his employer and clients for his outstanding job performance. (*Id.* ¶¶ 4.3-4.4.)

On January 16, 2025, Mr. Cass was staying at a hotel in Spokane, Washington for a work assignment. (*Id.* ¶ 4.5.) He awoke at about 4:00 a.m. with severe dizziness and nausea and was unable to work. (*Id.*) Mr. Cass contacted his coworkers to tell them about his condition, and when his symptoms failed to resolve, one of the coworkers drove Mr. Cass to the hospital. (*Id.*) After conducting multiple tests, medical staff initially diagnosed Mr. Cass with vertigo and severe dehydration, and ultimately determined that he had a viral infection. (*Id.* ¶ 4.6.) They advised Mr. Cass that he should be back to normal within three days to two weeks. (*Id.*)

Mr. Cass's condition, however, did not improve, and he was unable to drive safely because of his dizziness. (*Id.* ¶¶ 4.6-4.7.) His coworker drove him to Seattle so that he could fly home to Las Vegas. (*Id.*) Mr. Cass attempted to continue working on light duty, but he was unable to perform his normal job functions due to his illness. (*Id.*)

[1] The court takes the facts alleged in Mr. Cass's complaint as true when deciding IEG's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

After two weeks passed without relief from his dizziness, Mr. Cass pursued further testing and treatment. (*Id.* ¶ 4.8.) Between January 20, 2025, and May 14, 2025, Mr. Cass underwent multiple diagnostic tests in Las Vegas. (*Id.*) Mr. Cass continued to work from home while he underwent these tests, and he kept IEG informed of his medical condition and the steps he was taking to obtain a diagnosis. (*Id.* ¶¶ 4.9-4.10.) On May 14, 2025, his neurology provider preliminarily diagnosed him with spinal stenosis and referred him for a consultation with a neurosurgeon. (*Id.* ¶ 4.9.)

On Thursday, May 8, 2025, IEG Director of Human Resources Katie Follman sent Mr. Cass an email requesting that he complete a Department of Transportation ("DOT") physical and drug screen before Monday, May 12, 2025. (*Id.* ¶ 4.10.) Mr. Cass responded that he had upcoming neurosurgery appointments and provided Ms. Follman with his recent testing results. (*Id.*) He asked Ms. Follman, "Would you still like me to get the physical and drug test?" (*Id.*) Ms. Follman responded, "Please complete the DOT physical and drug screen before Monday." (*Id.*) Ms. Follman sent Mr. Cass an Authorization for Services that expired on May 12, 2025, and included a note in the "Special Instructions/Comments" section stating, "Ask [employee] about his dizzy spells." (*Id.* ¶ 4.11.)

Although he already had a valid DOT medical certificate that would not expire until October 2026, Mr. Cass completed the DOT physical and drug screen on the same day that he received the authorization from Ms. Follman. (*Id.* ¶¶ 4.12-4.13.) The DOT examining physician told Mr. Cass that although he passed the tests, he wanted a neurologist to sign off on Mr. Cass's ability to drive in light of his intermittent dizziness.

(*Id.* ¶ 4.14.) The DOT physician gave Mr. Cass 45 days to respond with information from his neurologist. (*Id.*)

On May 12, 2025, Ms. Follman and IEG Director of Operations Jessica Rowoldt ended Mr. Cass's employment by video call. (*Id.* ¶ 4.16.) They explained that he was terminated for two reasons: because he had "failed" his DOT physical, and "pursuant to a reduction in force." (*Id.* ¶ 4.17.) Between January 2025 and his termination, IEG never discussed with Mr. Cass whether reasonable accommodations would have allowed him to continue working; whether he could take medical leave; or whether he could use his short- or long-term disability benefits. (*Id.* ¶ 4.15.)

Mr. Cass initiated this action on April 21, 2026, in King County Superior Court. (*See* Not. of Removal (Dkt. # 1) at 1.) He brings claims against IEG for disability discrimination in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60.180; failure to accommodate in violation of the WLAD; retaliation in violation of the WLAD, RCW 49.60.210; and wrongful termination in violation of public policy. (Compl. ¶¶ 5.1-8.4.) IEG removed the action to this court on May 22, 2026, on the basis of diversity jurisdiction. (*See generally* Not. of Removal.)

IEG filed its motion for partial dismissal on May 29, 2026. (MTD.) On June 11, 2026, the court ordered the parties to show cause why the Western District of Washington is the proper venue for this action. (*See generally* 6/11/26 Order (Dkt. # 13).) IEG's motion ]and the court's order to show cause are now fully briefed and ripe for decision.

## III. ANALYSIS

Below, the court considers its order to show cause regarding venue and then turns to the motion for partial dismissal.

### A. Venue

In its June 11, 2026 order, the court observed that Mr. Cass is a citizen of Nevada, IEG is an Illinois corporation with its primary place of business in Illinois, and the medical condition on which Mr. Cass's claims are based arose when he was in Spokane, Washington. (6/11/26 Order at 2 (citing Compl.; Not. of Removal).) Because this matter's connection to the Western District of Washington was unclear, the court ordered the parties to show cause why the action should not be transferred to the Eastern District of Washington, the District of Nevada, or an appropriate District in Illinois. (*Id.*)

Mr. Cass argues that venue is proper in this District pursuant to 28 U.S.C. § 1441(a), which provides that an action brought in state court over which the district court has original jurisdiction may be removed by the defendant to the district court for the district where the state court action was pending. *See* 28 U.S.C. § 1441(a); (*see generally* Cass OSC Resp. (Dkt. # 16)). IEG, however, urges the court to transfer the case to the Northern District of Illinois. (*See generally* IEG OSC Resp. (Dkt. # 19).) The court agrees with Mr. Cass that venue is proper in this district pursuant to § 1441(a). *See Brenner v. Polaris Inc.*, No. C25-1466KKE, 2026 WL 63445 at *2 (W.D. Wash. Jan. 8, 2026) (denying defendant's motion to transfer venue after defendant removed the case from King County Superior Court). Therefore, the court discharges its order to show cause.

**B. Motion for Partial Dismissal**

IEG moves to dismiss Mr. Cass's claims for retaliation in violation of the WLAD and wrongful termination in violation of public policy. Below, the court sets forth the legal standard and then considers the parties' arguments regarding both claims.

1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6); *see also* Fed R. Civ. P. 8(a)(2) (requiring the plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief"). The court construes the allegations in the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must "take all well-pleaded factual allegations as true and [] draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998) (citation omitted).

2. WLAD Retaliation

The WLAD prohibits discrimination in employment on the basis of disability, among other protected characteristics. *See* RCW 49.60.030. The WLAD also prohibits

an employer from retaliating against an employee for opposing what the employee reasonably believed to be a discriminatory practice or filing a charge, testifying, or assisting with a proceeding to determine whether discrimination occurred. RCW 49.60.210(a); *Alonso v. Qwest Commc'ns Co., LLC*, 315 P.3d 610, 620 (Wash. Ct. App. 2013). To state a claim for retaliation, Mr. Cass must plausibly allege that: (1) he took a statutorily protected action, (2) he suffered an adverse employment action, and (3) there is a causal link between his protected activity and the adverse employment action. *Cornwell v. Microsoft Corp.*, 430 P.3d 229, 234 (Wash. 2018) (citation omitted). A complaint about an employer's conduct does not rise to the level of protected activity absent some reference to the plaintiff's protected status. *Alonso*, 315 P.3d at 620-21.

IEG argues that Mr. Cass's retaliation claim must be dismissed because Mr. Cass has not alleged that he engaged in a protected activity or that there is a causal connection between any such protected activity and his termination. (MTD at 4-7.) Mr. Cass counters that "he engaged in protected activity by seeking medical treatment for his disability" and that a causal link can be inferred by the proximity in time between his medical treatment and his termination. (Resp. at 7-8 (citing Compl. ¶¶ 4.8-10, 4.16).) Mr. Cass does not, however, make any allegation that he opposed a discriminatory practice or that he participated in any way in a proceeding regarding discrimination. (*See generally* Compl.) Although termination for seeking medical treatment could form the basis for a WLAD discrimination claim, it does not fit within the framework for a WLAD retaliation claim. Therefore, the court grants IEG's motion to dismiss Mr. Cass's retaliation claim.

When granting a motion to dismiss, the court generally must grant the plaintiff leave to amend unless the complaint could not possibly be cured by the allegation of other facts. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). Leave to amend is not required, however, where amendment would be futile, such as when the pleading could not possibly be cured by further factual allegations. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016). Because the court cannot conclude on the current record that amendment of Mr. Cass's retaliation claim would be futile, the court dismisses this claim with leave to amend.

3. Wrongful Termination in Violation of Public Policy

To state a claim for wrongful termination in violation of public policy, Mr. Cass must plausibly allege (1) that his "'discharge may have been motivated by reasons that contravene a clear mandate of public policy,' . . . and (2) that the public-policy-linked conduct was a significant factor in the decision to discharge" him. *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 384-85 (Wash. Ct. App. 2020) (quoting *Martin v. Gonzaga Univ.*, 425 P.3d 837, 843 (Wash. 2018)). Wrongful termination in violation of public policy claims are generally limited to four categories:

> (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

*Id.* (quoting *Martin*, 425 P.3d at 843). If a plaintiff's claim does not fit into one of these categories, an alternative four-factor framework applies in which the plaintiff must show: (1) the existence of a clear public policy; (2) that discouraging the conduct in which they engaged would jeopardize the public policy; and (3) that the public-policy-linked conduct caused the dismissal. *Martin*, 425 P.3d at 843 (citation omitted). If the plaintiff establishes the first three factors, then (4) the burden shifts to the defendant to offer an overriding justification for the dismissal. *Id.*

Mr. Cass alleges that IEG fired him "because he asserted rights to which he was entitled [] under Washington Law." (Compl. ¶ 8.2.) IEG argues that Mr. Cass's claim fails because he does not adequately allege that he exercised a legal right or privilege, or that his exercise of any such right was a substantial factor in his termination. (MTD at 7-8.) In response, Mr. Cass asserts that the alternative framework applies to his claim. (*See* Resp. at 9.) Regardless of what framework applies, the court agrees with IEG that Mr. Cass fails to state a wrongful termination in violation of public policy claim. First, the court agrees that Mr. Cass has not identified the clear public policy at issue. Mr. Cass asserts that Washington has (1) a "strong policy in favor of employees having the ability to seek medical treatment for themselves and family members," as demonstrated by laws such as Washington's Paid Family and Medical Leave Act, the Washington Cares Act (establishing long-term disability insurance for employees), and the Washington Family Care Act (allowing employees to use their choice of sick leave or other paid time off to care for family members), as well as (2) a strong public policy against workplace discrimination as demonstrated by the WLAD. (*Id.* at 9-10.) Mr. Cass does not,

however, allege that he engaged in public-policy-linked conduct under these policies by requesting medical leave to seek treatment or by requesting accommodations for a disability. (*See generally* Compl.) Second, because Mr. Cass does not allege that he engaged in public-policy-linked conduct, he cannot plausibly allege that he was terminated for doing so. As a result, the court concludes that Mr. Cass has not stated a claim for wrongful termination in violation of public policy and grants IEG's motion to dismiss this claim. The court grants Mr. Cass leave to amend his wrongful termination claim because it cannot conclude on the current record that amendment would be futile.

## IV. CONCLUSION

For the foregoing reasons, the court DISCHARGES its order to show cause (Dkt. # 13) and GRANTS IEG's motion for partial dismissal (Dkt. # 7). Mr. Cass may file an amended complaint that addresses the deficiencies identified in this order by no later than **September 4, 2026**. Failure to timely file an amended complaint will result in the dismissal with prejudice of Mr. Cass's claims for WLAD retaliation and wrongful termination in violation of public policy.

Dated this 20th day of August, 2026.

JAMES L. ROBART
United States District Judge